IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

THOMAS ARTHUR ALLEN, III                                                    PLAINTIFF

v.                                    Civil No. 1:20-cv-01013

LIEUTENANT COLTEN OLIVER, SERGEANT
SAWYER STANTON; DEPUTY CODY BROSWELL;
DEPUTY CALEB TAYLOR; SHERIFF RICKY
ROBERTS; and CAPTAIN RICHARD MITCHAM                         DEFENDANTS

**MEMORANDUM OPINION**

This is a civil rights action filed *pro* se by Plaintiff, Thomas Arthur Allen, III, under 42 U.S.C. § 1983. On July 17, 2020, the parties consented to have the undersigned conduct all proceedings in this case including a jury or nonjury trial and to order the entry of a final judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. (ECF No. 17). Before the Court is a Motion for Summary Judgment filed by Defendants. (ECF No. 27). Plaintiff filed a Response to the motion on January 15, 2021. (ECF No. 38). The Court finds this matter ripe for consideration.

**I. FACTUAL BACKROUND**

Plaintiff is currently incarcerated in the Union County Detention Center ("UCDC") in El Dorado, Arkansas. His claims in this action arise from an alleged unlawful search of his home and seizure of items on November 30, 2019, the UCDC's failure to provide an up-to-date law library, and what Plaintiff describes as being "forced to pay a debt that no proof can be provided that I owe it" during his incarceration in the UCDC in 2020. (ECF No. 7, pp. 5-7).

On February 15, 2029, Plaintiff signed a parolee/probationer Warrantless Search Waiver which states:

1

> As a condition of my supervision, I agree to allow any Arkansas Community Correction officer, or any certified law enforcement officer, to conduct a warrantless search of [his] person, place of residence, or motor vehicle at any time, day or night, whenever requested[1] by the Arkansas Community Correction officer or certified law enforcement officer. I understand that a warrantless search based on this waiver must be conducted in a reasonable manner but does not need to be based on a clearly expressed suspicion that I am committing or I have committed a criminal offense.

(ECF No. 29-2, p. 19).

In July of 2019, the UCDC changed commissary providers moving from Tiger Commissary to CTC Commissary. (ECF No. 29-1, p. 1). All inmate accounts from Tiger Commissary were transferred into the new CTC Commissary system. However, the Union County Sheriff's Office received only partial detainee spending histories from Tiger Commissary. *Id.* The spending details, including the date of charge and items charged, relating to Plaintiff's $8.92 carry over charge were not included in that data. *Id.* Union County has requested full spending histories for all detainees from Tiger Commissary, but as of December 14, 2020, Union County has not received the requested data. *Id.*

On November 30, 2019, Lieutenant Colton Oliver filed the following incident report after responding to a welfare check at Plaintiff's residence:

> On November 30, 2019 around 1424 hours Lieutenant Colton Oliver spoke with Lauren Alphin by phone in reference to a missing or endangered person. Alphin stated that she had not heard from her mother, Heather Ellis, in three days but was just informed that last night Ellis called Alphin's sister screaming to her in panic stating that Thomas Allen was trying to kill her and had kicked her out. Alphin stated that Allen has been aggressive and dangerous in the past pulling out firearms and abusing Ellis. Alphin feared something had happened to Ellis and wanted Deputies to locate her.
>
> Ellis' last known location was at Allen's residence at 5118/5064 Parnell Road. At the time of this incident Allen was on Probation with a Search Waiver on file through the Arkansas Board of Parole. Lieutenant Oliver and Deputies went to the

---

[1] Defendants incorrectly stated the Waiver read "required" instead of "requested".

residence and upon arrival a person could be seen running from the living room area to the right side of the home into a bedroom. Deputies fearing for Ellis's safety made entry immediately and found Ellis along with Kendal Washington and Kallandra Jones in the residence. Ellis stated that Allen was just in the residence and took off running when Officers pulled on the property. Ellis stated that she and Allen had gotten into an argument last night which led to Allen choking her and that was when she called her daughter. Ellis stated that she wanted to move out and get away from Allen. While Ellis was packing Kendall and Kallandra were sitting in the living room. Both were cooperative and calm. Oliver explained the situation and they stated they were just hanging out to which Ellis stated was true. Both were told they were free to leave due to not being involved in the current incident and both left. Allen could not be located in the residence.

During the search for Allen, Oliver located a loaded .22 caliber rifle in the living room leaning against the wall near the master bedroom door and a locked metal box underneath Allen's bed. The box had a slight hole in the side that revealed a pill bottle inside. Sergeant Stanton located a glass pipe that appeared to be used for smoking methamphetamine on a shelf beside Allen's bed. Deputy Braswell located a wooden pipe believed to be used for smoking marijuana by the end table near the living room furniture. Lauren Alphin arrived on the scene to help move her mother off the property. While moving items she located a small container that held what appeared to be marijuana that she handed to Deputy Braswell. Deputy Taylor located a clear plastic bag with apparent marijuana inside the master bath toilet bowl to which Ellis said Arthur gave to her to put in the toilet, a small container of apparent marijuana in the dresser in Allen's bedroom, a small metal pipe with marijuana residue in the hallway bathroom, Taylor then located a backpack beside the living room love seat that leans against the master bedroom wall where Kendall was sitting when deputies arrived. Inside this bag was a container commonly used to hold eyeglasses. Inside the container several bags of narcotic including 1.6 ounces of apparent methamphetamine, a plastic bag containing apparent marijuana, another bag of a brown unknown residue, and small plastic baggies commonly used to portion up narcotics was discovered. Also located in the backpack was another plastic bag of apparent marijuana with a butane torch, a black weight scale and a wallet. Inside the wallet was a driver's license for Kendall Washington along with a social security card, two debit/credit cards, EBT card and insurance card all belonging to Kendall Washington. Oliver was contacted by Probation Officer Corey Charles who had been informed by Allen's Probation Officer, Officer White of the locked box that was found along with the situation. Officer Charles stated that we did have permission to open the locked box. The box was taken to the USCO along with all the evidence that was seized and opened by force. Inside the lock box were three weight scales, a pill bottle with apparent marijuana inside and 58 pills of Sildenfil Citrate (Viagra). All evidence was secured in evidence Locker #2 to be turned over to investigations.

End of Statement

(ECF No. 29-2, p. 5).  Video of the search was also taken.  (ECF No. 29-6).

On December 4, 2019, Investigator Austin McCuistion filed a report stating, "On 12/4/19, at approximately 1500 hours, Investigator McCuistion made contact with Thomas Allen III at the Probation and Parole office in reference to serving an active CAD Warrant (CAD 19340) for Allen's arrest.  Investigator McCuistion transported Allen to the Union County Detention Facility where he was held pending first appearance."  (ECF No. 29-2, p. 12).  That same day, Plaintiff was booked into the UCDC for domestic battery, possession of a controlled substance, possession of drug paraphernalia, possession of firearms by certain persons, and maintaining a drug premises. *Id.* at p. 13.

On January 30, 2020, Plaintiff was charged by criminal information with Possession of a Firearm by certain persons, Possession of Drug paraphernalia, Domestic Battery, maintaining a Drug Premises, and Failure to Comply.  *State of Arkansas v. Thomas Allen,* Case No. 70 CR 2020-38-1.  *See* Criminal Information, Affidavit of Probable Cause.  *Arkansas Court Connect.*  Plaintiff was also subsequently charged with violations of the conditions of his probation and parole.  *State of Arkansas v. Thomas Allen,* Case Nos. 70 CR 13-308-1; 70 CR 17-326-1; 70 CR 18-415-1.  *Arkansas Court Connect.*

On February 7, 2020, Plaintiff filed a Commissary Grievance, stating, "I haven't had any debt since I've been here y now that account got reset do I have a debt?"  (ECF No. 29-3, p. 1).  Jail Sergeant replied, "This is from an old debt through Tiger account.  CTC recently did an upgrade and merged all accounts.  It show you owe an old debt of $8.42.  This is why."  *Id.*  Between February 7 and March 3, 2020, Plaintiff filed thirteen (13) grievances concerning this

charge arguing he would not pay the debt because the UCDC could not provide any proof that he owed $8.42.[2]

During March of 2020, Plaintiff filed eight (8) grievances concerning the "incomplete" and "outdated" law library at the UCDC. (ECF No. 29-3, pp. 4-6, 18-22). One of these grievances stated, "I was informed by my attorney that the law library is not up to date which is a violation of my rights I would ask that it be updated immediately so the U.C.S.O is no longer in violation of my civil rights." *Id.* at p. 5. Captain Mitcham responded, "Have your attorney contact me." *Id.*

On March 19, 2020, Plaintiff filed Grievance #224617, stating, "I would like to speak to Ricky Roberts about the deputies who illegally searched my home [on November 30, 2019] and violated my 4 amendment rights now I realize as a felone my rights are limited but I'm also aware that I do still have them." (ECF No. 29-3, p. 23). Officer Johnson replied, "will forward." *Id.* Plaintiff submitted several additional grievances relating to the search of his home complaining he was not there at the time and could not have given consent for the search. (ECF No. 29-3, p. 32). He also stated in one of the grievances the "Union County Sheriff's Office [was] responsible…as well as the officers themselves…" because "this is the second time in under 3 years they have done this…" *Id.* at p. 26.

On August 20, 2020, Plaintiff appeared with his attorney in Case No. 70 CR 20-38-1 and, pursuant to a plea agreement, pled guilty to the charge of Possession of a Firearm by Certain persons with more than four prior felonies and was sentenced to the term of 15 years in the Arkansas Department of Corrections. (ECF No. 29-2, pp. 20-30). In exchange for the plea of

---

[2] *See* Grievances #220806, #220807, #220873, #221022, #221038, #221058, #221887, #222135, #222179, #222334, #222353. (ECF No. 29-3, pp. 10-16). The record is not clear as to whether the debt was $8.42 or $8.92.

guilty, the State of Arkansas agreed to *nolle prosequi* the other three charges and the petitions to revoke Plaintiff's probation.  *Id.*  Allen was given credit for 264 days served in the UCDC.  *Id.*

According to the affidavit of Captain Richard Mitcham, a custodian of records for the Sheriff's office and a person familiar with the policies and procedures of the UCDC, the UCDC maintains a law library that is accessible to inmates and which meets jail standards.  (ECF No. 29-1, p. 2).  In addition, Mitcham states:

> It is the policy of the Union County Sheriff's office to (1) provide techniques to accomplish thorough and legal searches; (2) observe the constitutional rights of the person(s) the warrant is being served upon; (3) minimize the level of intrusion experienced by those who are having their premises searched; (4) provide for the highest degree of safety for all persons concerned; and (5) establish a record of the entire execution process.  Search warrants are to be executed only after review and approval by the Sheriff.

*Id.,* (ECF No. 29-5, p. 1).

## II. PROCEDURAL BACKGROUND

Plaintiff filed his initial Complaint on April 17, 2020 naming Lieutenant Colten Oliver, Sergeant Sawyer Stanton, Deputy Cody Braswell[3], Deputy Caleb Taylor, Sheriff Ricky Roberts and Captain Richard Mitcham as Defendants.  (ECF No. 1).  In response to this Court's order (ECF No. 6), Plaintiff filed an Amended Complaint on May 6, 2020.  (ECF No. 7).  He is seeking compensatory and punitive damages and is suing Defendants in their individual and official capacities.  *Id.* at p. 8.

In Claim One Plaintiff alleges Defendants conducted an illegal search and seizure of his residence on November 29, 2019.  (ECF No. 7, p. 5).  However, the record confirms the incident actually occurred on November 30, 2019.  (ECF No. 29-2, p. 5).  Plaintiff specifically alleges,

---

[3] Cody Braswell is incorrectly identified in the case caption as "Broswell".

"These Officers violated my 4th amendment rights on Nov. 29, 2019 by entering my home without reasonable cause to do so. The person they came to do a well fare check on met them outside the home. Her well being was fine therefore they had no cause to violate my privacy." *Id.* He goes on to describe his official capacity claim as follows, "this is the third time in three years that Officers from Union County Sheriff's office have entered my home without a warrant or any reasonable cause to do so. This is obviously a custom or policy [of] of this Sheriff's Department practices due to the fact it is a repeated behavior." (ECF No. 7, p. 6).

Plaintiff describes Claim Two as a "violation of 1st amendment rights". (ECF No. 7, p. 6). He alleges Defendant Roberts and Mitcham failed "to provide a law library that is up to date. This leaves me unable or at a severe disadvantage to properly defend myself should I choose to proceed pro se." *Id.* When asked to describe the policy or custom which caused a violation of his right in an official capacity he states, "I have continually asked that the law library be updated and have been told that it is but the last update was 2015. They have refused to update the library which violates my 1st amendment rights." *Id.* at p. 7.

In Claim Three Plaintiff alleges Defendant Mitcham forced [him] "to pay a debt that the UCDC could not prove I owed." (ECF No. 7, p. 7). He goes on to describe his official capacity claim as, "Im one of a number of inmates that had a debt appear after accounts from 2 comissary companies were merged. Union County Detention Center was unable to provide us with proof of these debts. Seeing that it was several inmates involved it is a custom or policy." *Id.* at p. 8.

On December 14, 2020, Defendants filed a Motion for Summary Judgment arguing they are entitled to judgment as a matter of law because: 1) Plaintiff's claims regarding the search of his residence are barred by *Heck v. Humphry;* 2) Plaintiff signed a search waiver as a condition of his probation; 3) the search of Plaintiff's resident was objectively reasonable; 4) Plaintiff was not

denied the right to access the courts because of the UCDC's law library; 5) Plaintiff was not denied due process by a charge to his commissary account; 6) Defendants are entitled to qualified immunity; and 7) there is no basis for official capacity liability.  (ECF No. 27).

On January 15, 2020, Plaintiff filed a Response to the motion arguing in part: 1) he was denied "due process because there was no access to a law library or a civil attorney or legal aid to assist me in the 1983 claim"; 2) a debt of $8.92 appeared on my inmate account and Defendants "still have not provided any proof, such as account information or transactions"; 3) the search waiver he signed did not permit entry unless Defendants "requested to do so…I was not there so they could not request…"; and 4) the search of his home was not reasonable because two officers "entered my home without knocking" and the welfare check "should have been concluded on the porch".  (ECF No. 38).  Plaintiff also included in his Response statements of disputed fact and fifteen (15) pages of legal citations and accompanying arguments.  *Id.*

### III. LEGAL STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986).  "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *Nat'l Bank of Comm. v. Dow Chem. Co*., 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586.  "They must show there is sufficient

evidence to support a jury verdict in their favor." *Nat'l Bank*, 165 F.3d at 607 (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id.* (*citing*, *Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## IV. DISCUSSION

### A. Search and Seizure at Plaintiff's Residence

Plaintiff alleges Defendants Oliver, Stanton, Braswell, Taylor, and Roberts violated his constitutional rights on November 30, 2019 when they entered his home "without reasonable cause to do so…" He goes on to state, "the person they came to do a well fare check on met them outside the home. Her well being was fine therefore they had no cause to violate my privacy." (ECF No. 7, p. 5). Defendants argue this claim is barred by *Heck v. Humphrey*, the entry and search of the home was constitutionally sound because Plaintiff was a probationer who was subject to a search waiver, and the search was objectively reasonable considering the circumstances which confronted the Defendants when they arrived at Plaintiff's residence. (ECF No. 28, p. 3).

Following the search on November 30, 2019, Plaintiff was charged with Possession of a Firearm by certain persons, Possession of Drug paraphernalia, Domestic Battery, maintaining a Drug Premises, and Failure to Comply.[4] He was also subsequently charged with violations of the conditions of his probation and parole.[5] On August 20, 2020, Plaintiff appeared with his attorney

---

[4] *State of Arkansas v. Thomas Allen,* Case No. 70 CR 2020-38-1. *See* Criminal Information, Affidavit of Probable Cause. *Arkansas Court Connect*.
[5] *State of Arkansas v. Thomas Allen,* Case Nos. 70 CR 13-308-1; 70 CR 17-326-1; 70 CR 18-415-1. *Arkansas Court*

9

and, pursuant to a plea agreement, pled guilty to the charge of Possession of a Firearm by Certain persons with more than four prior felonies and was sentenced to the term of 15 years in the Arkansas Department of Corrections. (ECF No. 29-2, pp. 20-30). In exchange for his plea of guilty, the State of Arkansas agreed to *nolle prosequi* the other three charges and the petitions to revoke Plaintiff's probation. *Id.* In addition, Plaintiff was given credit for 264 days served in the UCDC. *Id.*

In *Heck v. Humphrey,* 512 U.S. 477 (1994), the Supreme Court held a claim for damages for "allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid" is not cognizable until "the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of *habeas corpus*." *Heck,* 512 U.S. 486-487. The Court noted if a successful claim would not demonstrate the invalidity of an outstanding criminal judgment, it should be allowed to proceed. The *Heck* bar has been applied to claims for injunctive or declaratory relief and damages. *See Smith v. Norris,* 40 F. App'x 305 (8th Cir. 2002) (unpublished); *Rosendahl v. Norman,* 242 F.3d 376 (8th Cir. 2000).

In footnote seven, the Supreme Court in *Heck* explained that a damages action for an illegal search does not necessarily imply the invalidity of a conviction due to doctrines such as independent source, inevitable discovery, and harmless error. *Heck,* 114 S. Ct. at 2372 n. 7. "In order to recover compensatory damages, however, the § 1983 plaintiff must prove not only that the search was unlawful, but that it caused him actual, compensable injury, which, we hold today, does not encompass the "injury" of being convicted and imprisoned (until his conviction has been

---

*Connect.*

10

overturned)." *Id.* The Eighth Circuit has interpreted this footnote to create a general exception from *Heck* for Fourth Amendment unreasonable search and seizure claims. *See, Simmons v. O'Brien,* 77 F.3d 1093, 1095 (8th Cir. 1996).

Even though a § 1983 action for illegal search is not categorically barred by *Heck,* in this case Plaintiff pled guilty to possessing a firearm that was recovered in the search. Therefore, a determination that the search was invalid would undermine the validity of his conviction, in contravention of *Heck.* Plaintiff has not alleged that his conviction has been invalidated by the highest state court or in federal *habeas* proceeding. Therefore, his claims arising from the allegedly illegal search are barred by *Heck.* Plaintiff may not use the civil rights *statutes* as a substitute for *habeas corpus* relief. *See e.g., Edwards v. Balisok,* 520 U.S. 641, 648 (1997); *Preiser v. Rodriguez,* 411 U.S. 475, 500 (1973) (*habeas corpus* is the sole federal remedy for prisoners attacking the validity of their conviction or confinement).

Accordingly, Defendants are entitled to summary judgment on Plaintiff's claim based on an illegal search and seizure of his resident.[6]

### B. Outdated Law Library

Plaintiff alleges his constitutional rights were violated by Defendants Roberts and Mitcham because they failed "to provide a law library that is up to date". (ECF No. 7, p. 6).

The Supreme Court has held "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bounds v. Smith,* 430 U.S. 817, 828 (1977). Nevertheless, *Bounds* "did not create an

---

[6]The Court also notes Plaintiff signed a Warrantless Search Waiver with the Arkansas Department of Community Corrections as a part of the terms of the probation supervision which he was under in November of 2019 when the search occurred. (ECF No. 29-1, p. 19).

abstract, freestanding right to a law library or legal assistance." *Lewis v. Casey,* 518 U.S. 343, 351 (1996). Instead, prison officials must provide inmates with "meaningful access to the courts," *Bounds,* 430 U.S. at 824, and providing a law library is merely one way to comply with this obligation. *See Bear v. Fayram,* 650 F.3d 1120, 1123 (8th Cir. 2011) (the constitutional requirement of access to the courts may be satisfied in several ways including, prison libraries, jailhouse lawyers, private lawyers on contract with the prison, or some combination of these and other methods).

An inmate cannot prevail on an access-to-courts claim unless he can demonstrate he suffered prejudice or actual injury because of the prison officials' conduct. *See Lewis,* 518 U.S. at 351-2; *see also Farver v. Vilches,* 155 F.3d 978, 979-80 (8th Cir. 1998) (per curiam); *Klinger v. Dep't of Corr.,* 107 F.3d 609, 617 (8th Cir. 1997) (to prevail on access-to-courts claim, inmate must show actual injury or prejudice even if denial of access to library is complete and systematic). "To prove a violation of the right of meaningful access to the courts, a prisoner must establish the state has not provided an opportunity to litigate a claim challenging the prisoner's sentence or conditions of confinement in a court of law, which resulted in actual injury, that is, the hindrance of a nonfrivolous and arguably meritorious underlying legal claim." *Hartsfield v. Nichols,* 511 F.3d 826, 831 (8th Cir. 2008) (citations omitted).

Here, Plaintiff has failed to offer any evidence of actual injury or prejudice to his criminal case or the instant 1983 action. The record reflects he had counsel representing him in his criminal case. In addition, Plaintiff not only filed an Amended Complaint in this action but has conducted and responded to discovery and filed a detailed Response to Defendants' summary judgment motion including numerous legal citations to case law.

Accordingly, Defendants are entitled to summary judgment on Plaintiff's claim alleging the law library at the UCDC was inadequate and out of date.

### C. Undocumented Commissary Charge

Plaintiff alleged his constitutional rights were violated when Defendant Mitcham charged approximately $8.92 on Plaintiff's commissary account and the charge could not be documented. Here, Plaintiff has adequate post-deprivation remedies to regain his property. *See Elliot v. Hurst,* 307 Ark. 134, 817 S.W.2d 877, 880 (1991) (cause of action for conversion lies where a distinct act of dominion is exerted over property in denial of owner's right). Therefore, Plaintiff's allegations do not rise to the level of a constitutional violation. *See Hudson v. Palmer,* 468 U.S. 517, 533 (1984) (intentional deprivation of property does not violate due process when meaningful post-deprivation remedy is available); *Barnett v. Centoni,* 31 F.3d 813 (9th Cir. 1994) (negligent or intentional deprivation of prisoner's property fails to state a claim under § 1983 if state had adequate post-deprivation remedy).

Because Plaintiff can seek redress in Arkansas state courts for his claim of loss of money from his commissary account, he has no claim under § 1983. Accordingly, Defendant Mitcham is entitled to summary judgment on this claim.

### D. Official Capacity Claims

Plaintiff also sued Defendants in their official capacity. Official capacity claims are "functionally equivalent to a suit against the employing governmental entity." *Veatch v. Bartels Lutheran Home,* 627 F.3d 1254, 1257 (8th Cir. 2010). In this case, Plaintiff's official capacity claims against Defendants are treated as claims against Union County. *See Murray v. Lene,* 595 F.3d 868, 873 (8th Cir. 2010).

"[I]t is well established that a municipality [or county] cannot be held liable on a *respondeat superior* theory, that is, solely because it employs a tortfeasor." *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201, 1214 (8th Cir. 2013). To establish Union County's liability under section 1983, "plaintiff must show that a constitutional violation was committed pursuant to an official custom, policy, or practice of the governmental entity." *Moyle v. Anderson*, 571 F.3d 814, 817 (8th Cir. 2009) (citation omitted). To establish the existence of an unconstitutional policy, Plaintiff must point to "a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir. 1999).

Here, Plaintiff has failed to produce any summary judgment evidence of a policy or custom of Union County that contributed to the alleged violation of Plaintiff's constitutional rights. Instead, the record confirms Union County had policies in place to protect the rights of individuals against illegal search and seizure and to provide access to a law library. The law is clear that "an internal jail policy or procedure does not create a constitutional right, nor does a correctional officer's failure to follow such regulation rise to the level of a § 1983 claim." *Brown v. Boone Cnty.*, No. 5:13-cv-03065-TLB, 2014 WL 4405433, at *5 (W.D. Ark. Sept. 5, 2014) (citing *Kennedy v. Blankenship*, 100 F.3d 640, 643 (8th Cir. 1996)).

As for Plaintiff's claim regarding a debt he does not owe, again the record is clear the UCDC changed commissary providers which may have caused a discrepancy in some of the inmate accounts. However, there is no evidence to demonstrate the change in commissary providers was implemented pursuant to an official custom, policy, or practice. Moreover, as previously discussed, Plaintiff has an adequate remedy under state law to pursue and recover any damages he sustained because of an allegedly incorrect amount due on his commissary account.

Accordingly, Plaintiff's claims against Defendants in their official capacities fail as a matter of law and they are entitled to summary judgment on those claims.[7]

## V. CONCLUSION

For the reasons stated above, Defendants' Motion for Summary Judgment (ECF No. 27) is **GRANTED.** Plaintiff's claims against Defendants Colten Oliver, Sawyer Stanton, Cody Braswell, Caleb Taylor, Ricky Roberts, and Richard Mitcham are **DISMISSED WITH PREJUDICE.** A judgment of even date shall issue.

**IT IS SO ORDERED,** this 2nd day of February 2021.

/s/ *Barry A. Bryant*
HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE

---

[7] Because there was no violation of Plaintiff's constitutional rights, it is unnecessary for the Court to address the issue of qualified immunity.